UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WILLIAM CARTER and JANET CARTER, husband and wife,<br><br>    Plaintiffs,<br><br>    v.<br><br><br>DANA CORPORATION, et al.,<br><br>    Defendants. | No. CV-05-102-FVS<br><br>ORDER |

**THIS MATTER** comes before the Court without oral argument based upon the parties' cross motions for summary judgment. Mr. Carter is represented by Mr. Paul J. Burns. The defendants are represented by Mr. Donald W. Heyrich.

**BACKGROUND**

William Carter worked for the Dana Corporation from 1992 until the Summer of 2003. Mr. Carter was a member of its Engine Management Group ("EMG"). He was one of a number of salespeople within the EMG that sold automotive products for the National Automotive Parts Association ("NAPA"). During February of 2003, Dana agreed to sell the EMG to Standard Motor Products, Inc. Not long thereafter, NAPA decided to discontinue relying upon EMG salespeople to distribute auto parts. Instead, NAPA decided to rely upon its own employees and, to some extent, the employees of other companies. One of the

ORDER - 1

companies upon which NAPA decided to rely is Multi-Line Marketing. After learning of NAPA's decision, Mr. Carter sought a job elsewhere in Dana Corporation, but was unable to find one. Nor was he able to obtain work with NAPA. During June of 2003, he applied for and was offered a job with Multi-Line. The EMG sale closed on June 30th. On or after July 1st, Mr. Carter began working for Multi-Line. He has been employed continuously by Multi-Line since then. During the spring of 2004, Mr. Carter applied for severance benefits under the Dana Corporation Income Protection Plan. The Plan Administrator denied both his initial request and his administrative appeal. This action followed.

**JURISDICTION**

The Plan is an "employee welfare benefit plan" within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1002(1). Since Mr. Carter is a participant or beneficiary who is seeking severance benefits that allegedly are due him under the Plan, 29 U.S.C. § 1132(a)(1), the Court has jurisdiction over the subject matter of this action. 29 U.S.C. § 1132(e)(1).

**STANDARD OF REVIEW**

Review of the Administrator's decision to deny severance benefits is de novo unless the Plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103

ORDER - 2

L.Ed.2d 80 (1989). Mr. Carter does not deny that the Plan confers discretion upon the Administrator to determine his eligibility for severance benefits, nor does he argue that the Administrator was subject to a conflict of interest. Thus, the Administrator's decision is reviewed for abuse of discretion. In order to obtain relief under this standard, Mr. Carter must demonstrate that the Administrator (1) rendered a decision without explanation, (2) construed provisions of the Plan in a way that conflicts with the Plan's plain language, or (3) relied upon clearly erroneous findings of fact. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 944 (9th Cir.1999). Identifying the standard of review has significant ramifications. For example, Mr. Carter argues the Administrator should have construed the Plan's terms "'in an ordinary and popular sense as would a [person] of average intelligence and experience[.]'" *Deegan v. Cont'l Cas. Co.*, 167 F.3d 502, 508 (9th Cir.1999) (quoting *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir.1990) (alteration in *Evans*). This clearly is the rule when an administrator's decision is reviewed de novo, as was the case in *Deegan*. 167 F.3d at 506 n.1. Here, by contrast, a more generous standard applies. The Administrator is entitled to "the full benefit of the discretion afforded to [him] by [the plan] in interpreting plan terms, be they defined or undefined, with the reasonableness of those interpretations being evaluated against the relevant factual and legal backgrounds." *Hensley v. Northwest Permanente P.C. Retirement Plan & Trust*, 258 F.3d 986, 1001 (9th Cir.2001).

ORDER - 3

**RULING**

The Dana Corporation Income Protection Plan limits an employee's eligibility for severance benefits in at least two ways. Initially, an employee is ineligible if he "continues in employment with a successor employer[.]" Alternatively, an employee is ineligible if he "refuses to accept a Comparable Job . . . that is offered by the Company or by such successor employer." The Plan Administrator invoked both provisions in denying Mr. Carter's application for severance benefits. If the Administrator reasonably invoked either of these two provisions, his decision must be upheld.

A. Court need not determine whether Administrator reasonably construed the term "successor employer"

The Plan Administrator decided that Multi-Line Marketing is providing NAPA with part of the sales force Dana once provided to NAPA. Given this circumstance, the Administrator decided that Multi-Line is a successor to Dana. Since Mr. Carter began working for Multi-Line shortly after the sale closed, and since, in the Administrator's opinion, Multi-Line constitutes a successor employer, the Administrator concluded that Mr. Carter's application for severance benefits is barred by the first of the two limitations described above. This is a controversial conclusion. As Mr. Carter points out, the Administrator's construction of the term "successor employer" is inconsistent with a widely accepted view of what it means to be a "successor." *See, e.g.,* Black's Law Dictionary 1446 (7th ed.1999). Were the Administrator's construction subject to de

novo review, it might not stand.  However, his construction is reviewed for an abuse of discretion; under this more generous standard, he is not bound by the common law.  *Hensley*, 258 F.3d at 1001.  As a result, his failure to employ a common-law definition of the term "successor" is not a basis for reversing his decision.  Rather, the issue is whether his definition of the term is reasonable under the circumstances.  The Court need not resolve this issue because, as will be explained below, the Administrator reasonably decided that Mr. Carter refused to accept a comparable job with Standard Motor Products.

B. <u>Administrator reasonably determined that jobs offered by Standard were comparable to jobs terminated by sale</u>

The Plan was amended on December 13, 2002.  The term "Comparable Job" is now defined to mean:

> a position with the Corporation or a successor employer which (I) is at a base salary or wage not less than the Employee's current rate of pay from the Corporation, (II) requires similar skill requirements to the Employee's current position, and (III) in the case of an alternative job offer from the Corporation, is located no more than 50 miles from the Employee's current work location.

Although Mr. Carter questions whether the jobs promised by Standard should be deemed comparable given the fact Standard promised no more than two months employment, there is nothing in the definition of the term "comparable job" that requires long-term employment.  Thus, the Administrator did not abuse his discretion by concluding that the job Mr. Carter allegedly would have been offered by Standard was comparable with the one he had at Dana prior to closing.

ORDER - 5

C. Administrator reasonably determined that Mr. Carter refused employment by Standard

The record before the Administrator contains evidence that Mr. Carter was encouraged to seek work with Multi-Line; that he discussed employment with Multi-Line prior to the date upon which the sale closed; and that shortly thereafter, he began working for Multi-Line. The record also contains evidence that Standard offered jobs to those members of Dana's EMG who, unlike Mr. Carter, had not secured other employment by the date upon which the sale closed. Given these circumstances, the Administrator concluded that Mr. Carter implicitly refused a job with Standard by accepting a job with Multi-Line. Mr. Carter vigorously disputes the Administrator's interpretation of the administrative record. Mr. Carter says he wanted to work for Standard, but his superiors at Dana frustrated his efforts to do so. Were the Administrator's decision subject to de novo review, the evidence presented by Mr. Carter would be sufficient to create a genuine issue of material fact with respect to whether he waived employment with Standard by accepting a job with Multi-Line or whether he accepted a job with Multi-Line only because his efforts to find a job with Standard were frustrated. However, review is for abuse of discretion. Under this standard, the Administrator's resolution of conflicting evidence is entitled to deference. *See Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 879-80 (9th Cir.2004). A reasonable person could conclude that Mr. Carter weighed his options during June of 2003 and decided he would

ORDER - 6

be better off working for Multi-Line than Standard, and that, by accepting an offer from Multi-Line, he implicitly refused a job with Standard. Thus, it was not unreasonable for the Administrator to conclude that Mr. Carter is ineligible for severance benefits under the Plan.

**IT IS HEREBY ORDERED:**

1. Mr. Carter's motion for summary judgment (**Ct. Rec. 19**) is denied.

2. The defendants' motion for summary judgment (**Ct. Rec. 15**) is granted.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this order, enter judgment accordingly, furnish copies to counsel, and close this case.

**DATED** this   17th   day of January, 2006.

                                s/Fred Van Sickle
                                 Fred Van Sickle
                         United States District Judge